CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/25/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER STEPHEN GOIN,<br><br>*Defendant.* | CASE NO. 6:07-cr-00031<br><br>MEMORANDUM OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

Petitioner Christopher Stephen Goin moved to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. 407. In its April 16, 2021 Memorandum Opinion & Order, Dkt. 425, the Court denied the United States' motion to dismiss Goin's § 2255 motion for lack of jurisdiction, Dkt. 417, and granted the United States leave to assert additional defenses. The United States filed a response in opposition to Goin's § 2255 motion. Dkt. 426. Goin replied. Dkt. 427.

Because Goin cannot take advantage of equitable tolling and does not meet his burden to demonstrate that he is actually innocent of the offense to which he pleaded guilty, the Court will dismiss his § 2255 petition as untimely.

## I. BACKGROUND

On February 25, 2008, Goin pleaded guilty—pursuant to a plea agreement, Dkt. 137—to conspiracy to manufacture, possess with intent to distribute, and distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 846. Dkts. 136, 138. On May 28, 2008, he was sentenced to the statutory mandatory minimum of 120 months' imprisonment. Dkt. 176. The Fourth Circuit denied Goin's appeal challenging the reasonableness of his sentence as barred by

the waiver in his plea agreement, Dkt. 289, and issued its mandate on September 16, 2009. Dkt. 296. Goin did not file a writ of certiorari.

Instead, on March 29, 2010, he filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Dkt. 306. Goin argued that newly discovered evidence—namely, the testimony of Thomas Jamerson at the trial of Kenneth Sampler on September 12, 2008 regarding the number of trips Jamerson made to Georgia to obtain methamphetamine and the quantities he obtained each time—"prove[d]" that "Goin received less than 500 grams of methamphetamines." Dkt. 306 at 4. Finding that it lacked jurisdiction to grant a new trial or modify Goin's sentence because Goin pleaded guilty, the Court denied Goin's motion for a new trial on April 14, 2010. Dkt. 313.

On December 14, 2018, Goin filed his federal habeas corpus petition, arguing that he received ineffective assistance of counsel in violation of the Sixth Amendment and that the newly discovered evidence of Jamerson's testimony at Sampler's September 2008 trial shows his "actual innocence" of the drug conspiracy charge to which he pleaded guilty. Dkt. 407 at 1, 21.

## II.  ANALYSIS

Ordinarily, a federal prisoner has one year to file a federal petition for habeas corpus, starting from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). But if a prisoner alleges newly discovered evidence, the filing deadline is one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2255(f)(4).

The Supreme Court has recognized two ways around the time limitations imposed in § 2255: the doctrine of "equitable tolling" and the "actual innocence" gateway. Goin does not satisfy the requirements for either, so the Court will dismiss his § 2255 petition as untimely.

## A. Equitable Tolling

The doctrine of equitable tolling excuses a petitioner's filing of a § 2255 petition after the statute of limitations has run by extending the time in which that petition may be filed. In *Holland v. Florida*, the Supreme Court held that "a [habeas] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

Goin filed his federal habeas corpus petition on December 14, 2018. Goin argues that newly discovered evidence—the testimony of Thomas Jamerson at the trial of Kenneth Sampler on September 12, 2008 regarding the number of trips Jamerson made to Georgia to obtain methamphetamine and the quantities he obtained each time—shows his "actual innocence" of the conspiracy charge. Dkt. 407 at 21. But Goin discovered this evidence—at the latest—on March 29, 2010, when he filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. Dkt. 306 at 4 ("Based on Jamerson's testimony in Sampler's trial, Jamerson could not have distributed 33 ounces of methamphetamine to Goin. . . . The newly discovered evidence goes straight to the heart of whether Goin possessed more than 500 grams of methamphetamine during the course of the conspiracy. . . . [It] would likely produce an acquittal of the conduct charged in the indictment in that it proves that Goin did not receive 33 ounces (935 grams) from Jamerson. Instead Goin received less than 500 grams of methamphetamines.").

Goin offers no explanation for his failure to file a habeas petition within one year after his conviction became final in December 2009[1] or within one year of his motion for a new trial in March 2010, when he evidently had discovered Jamerson's testimony at Sampler's trial.

Therefore, the doctrine of equitable tolling does not apply to Goin's case.

### B. "Actual Innocence"

When a petitioner can show that he is actually innocent, an equitable exception overriding the statute of limitations may apply to prevent a miscarriage of justice. In *McQuiggin v. Perkins*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." 569 U.S. 383, 386 (2013). The court "caution[ed], however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

Goin cannot meet this demanding standard because he has not met his burden to show that he is actually innocent of the crime for which he was convicted. In essence, he claims that he never possessed more than 500 grams of methamphetamine because Jamerson's testimony at

---

[1] "[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." *Clay v. United States*, 537 U.S. 522, 532 (2003). In general, "a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by . . . a United States court of appeals . . . is timely when it is filed . . . within 90 days after entry of the judgment." U.S. Sup. Ct. R. 13. Goin appealed his case to the Fourth Circuit, which issued its mandate on September 16, 2009. Dkt. 296. His time to file a petition for writ of certiorari expired 90 days later. Therefore, his conviction became final on December 16, 2009.

Sampler's trial shows that Goin received less than 500 grams of methamphetamine from Jamerson. But Goin's claim is not convincing.

First, he pleaded guilty, pursuant to a plea agreement, to conspiracy to manufacture, possess with intent to distribute, and distribute *more than 500 grams of methamphetamine* in violation of 21 U.S.C. § 846. Dkt. 137. The plea agreement specifically addressed the drug weight for which Goin agreed to be held responsible. *Id.* Goin now argues that he was "scared and intimidated" into pleading guilty. But he has not shown that his plea was not knowing and voluntary.

Second, Goin challenged at length the drug weight for which he was held responsible at his sentencing. Dkt. 201. He testified under oath that he only purchased methamphetamine from Jamerson during the relevant period of time, *id.* at 32, that his purchases from Jamerson totaled "maybe three and a half ounces," which he characterized as "a high estimate," *id.* at 34, and that he never tried to manufacture methamphetamine, *id.* at 32. He also testified that "[he] never sold any" methamphetamine. *Id.* at 36. This testimony prompted the following exchange:

> THE COURT: Well, let me get this straight. Are you saying you didn't sell drugs?
> GOIN: Yes, sir; that's correct.
> THE COURT: Well, what did you plead guilty to?
> GOIN: Well, I knew that I had no case built, to bring this thing to trial. And I know nothing about the system. I don't' know how to prepare a case myself. And based on what my lawyer told me, it didn't matter whether I was dealing or not. I was purchasing drugs from him. And going against these guys here, it is a sure thing they are going to convict you, whether they have got the evidence or not or whether it is truthful or not.

*Id.* at 36–37.

Ultimately, the Court found that Goin's testimony was not credible. *Id.* at 53–54 ("Well, let me just tell you right up front, I don't think Mr. Goin has told us the truth here today. My understanding was he initially said . . . he didn't try to manufacture any methamphetamine, is my

5

recollection. . . . And isn't that proven to be just a blatant falsehood?"), *see also id.* at 55 ("I'm telling you I don't believe him, because I think he hasn't . . . told the truth here today under oath. And he's inconsistent today . . . with statements he's previously made.").

After considering all the evidence, the Court found that a drug weight of 500 grams was foreseeable to Goin in the course of the conspiracy. *Id.* at 56. Importantly, the Court did not rely solely on Jamerson's claim that he sold more than 33 ounces to Goin. In fact, the Court explicitly rejected Goin's counsel's assertion that "the threshold drug weight determination really comes through the government's case out of the mouth of Thomas Jamerson":

> Well, it is not altogether out of his mouth. . . . [C]ertainly the uncontradicted evidence is Mr. Jamerson is selling drugs. . . . So the case is not altogether Mr. Jamerson. It is a result of a long and lengthy investigation in which numerous people have pled guilty to buying drugs from Mr. Jamerson in addition to Mr. Goin. So we know that Mr. Jamerson didn't tell everything wrong.

*Id.* at 51. The Court also considered evidence in the record that Goin spent $30,000 on drugs. *Id.* at 56 ("Here is somebody that is a big-time drug dealer. You are talking about $30,000 worth of drugs. Anybody that believes that a mere addict can go around spending $30,000 on drugs is . . . they are on another planet."). Finally, the Court also considered evidence that Goin "went out and obtained new sources" after Jamerson left the conspiracy, and that those sources "were buying methamphetamine in half-pound and one-pound quantities on an ongoing basis." *Id.* at 50.

The Fourth Circuit has held that, when determining the drug weight for which a coconspirator may be held responsible under § 846, "the most reasonable interpretation of the relevant statutory provisions requires a sentencing court to assess the quantity of narcotics attributable to each coconspirator by relying on the principles set forth in *Pinkerton*." *United States v. Irvin*, 2 F.3d 72, 77 (4th Cir. 1993). Under *Pinkerton v.*

6

*United States*, a coconspirator may be held criminally liable for acts of other members of the conspiracy if those acts are "done in furtherance of the conspiracy" and are "reasonably foreseen as a necessary or natural consequence of the" conspiracy. 328 U.S. 640, 647–48 (1946). Here, then, the Court looks not just to the drug exchanges between Goin and Jamerson, but those between Goin and those other coconspirators as well.

The record evidence the Court considered was more than sufficient to find that more than 500 grams of methamphetamine were foreseeable to Goin in the course of the conspiracy. In short, Goin has failed to "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386. Therefore, the actual innocence gateway is not available to him.

### III.  CONCLUSION

Accordingly, the Court GRANTS the United States' motion to dismiss, Dkt. 426, and DENIES Goin's § 2255 petition, Dkt. 407, as untimely.

It is so ORDERED.

The Clerk of Court is directed to send this Memorandum Opinion & Order to Petitioner and all counsel of record.

Entered this  25th  day of March 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE